| | | |
|---|---|---|
| THE MIDWEST MEDIA GROUP | : | |
| INC., ET AL | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| v. | : | 3:10-CV-843(JCH) |
| | : | |
| BENISTAR EMPLOYER SVC TRUST | : | |
| CO., ET AL | : | September 16, 2011 |
| Defendants. | : | |

**RULING RE: DEFENDANT BESTCO'S MOTION TO DISMISS [Doc. No. 69] &
DEFENDANT CRUMP GROUP'S MOTION TO DISMISS [Doc. No. 71]**

## I.    INTRODUCTION

This dispute arises from the failure of a tax planning scheme to deliver its

promised benefits and from the alleged misconduct of the purveyors of that tax planning

product.  The plaintiffs are two small companies that purchased the tax planning

product, as well as two principal shareholders of those companies, who bore the

financial consequences of the failed tax scheme.  The defendants are two companies

involved in the sale, marketing, and administration of the tax planning scheme.  The

plaintiffs filed an Amended Complaint on February 8, 2011.  Doc. No. 63.  On March 11,

2011, defendant Benistar Employer Services Trust Company ("BESTCO") filed a Motion

to Dismiss the Amended Complaint (Doc. No. 69) and defendant The Crump Group

("Crump") filed a Motion to Dismiss the Amended Complaint (Doc. No. 71).  For the

reasons that follow, the court grants BESTCO's Motion to Dismiss and grants in part

and denies in part Crump's Motion to Dismiss.

## II.    STANDARD OF REVIEW

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally-cognizable claim by making allegations that, if true, would show he is entitled to relief.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'").  The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (2009) (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard.  Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008).  The plausibility standard does not "require[] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8."  Arista Records, LLC v. Doe

3, 604 F.3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94

(2007) (holding that dismissal was inconsistent with the "liberal pleading standards set

forth by Rule 8(a)(2)"). However, the plausibility standard does impose some burden to

make factual allegations supporting a claim for relief. As the Iqbal court explained, it

"does not require detailed factual allegations, but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do.

Nor does a complaint suffice if it tenders naked assertions devoid of further

factual enhancement." Iqbal, 129 S. Ct. at 1949 (citations and internal quotations

omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible,"

obliging the plaintiff "to amplify a claim with some factual allegations in those contexts

where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at

213 (citation omitted); accord Arista Records, 604 F.3d at 120.

## III.    PROCEDURAL HISTORY

This action was originally filed on June 1, 2010 by plaintiffs Midwest Media

Group, Inc.[1] and Digital Attic, Inc. ("Digital"). John M. Connolly and Michael R.C.

McDonald, principal shareholders of the two companies, were later added as plaintiffs in

the Amended Complaint. The original Complaint sounded in fraud, conversion, and

breach of contract. Compl., at ¶¶ 22-26, 27-31, 32-35. On August 2, 2010, BESTCO

filed a Motion to Dismiss or For a More Definite Statement. Doc. No. 21. On August 4,

_____

[1] The court will not abbreviate the corporate name Midwest Media Group, Inc., as the
specific corporate name is relevant to whether BESTCO was ever in privity of contract with this
plaintiff.

Crump filed a Motion to Dismiss. Doc. No. 23. Following oral argument on the motions, the court granted BESTCO's Motion to Dismiss, with a right to replead the breach of contract count and with prejudice as to the fraud and conversion counts. See Doc. No. 49. The court also granted Crump's Motion to Dismiss with a right to replead the breach of contract count and with prejudice as to the fraud and conversion counts. Id. The court held that the fraud and conversion counts were barred by Connecticut's three year statute of limitations for tort claims. Conn. Gen. Stat. § 52-577. The court also denied the plaintiffs' request to withdraw the fraud and conversion counts with the intention of bringing those claims in another jurisdiction with a more favorable statute of limitations. See Hearing Tr. 1/3/11 (Doc. No. 50), at 49-50. The plaintiffs filed their Amended Complaint on February 8, 2011. Doc. No. 63. The pending Motions to Dismiss followed on March 11, 2011.

## IV.   FACTUAL BACKGROUND[2]

### A.   Introduction

Plaintiff Midwest Media Group, Inc. is an Illinois corporation with its principal place of business in Illinois. Am. Compl. (Doc. No. 63), at ¶ 1. Plaintiff Digital is a Wisconsin corporation with its principal place of business in Wisconsin.[3] Id. at ¶ 2. Plaintiff John M. Connolly is a citizen of Illinois and a principal shareholder of both

_____

[2] Taking the factual allegations in the Amended Complaint as true, and drawing all reasonable inferences in favor of the plaintiffs, the court assumes the following facts for the purposes of the Motion to Dismiss.

[3] Midwest Media Group, Inc. and Digital are collectively referred to herein as the "employer plaintiffs."

Midwest Media Group, Inc. and Digital.  Id. at ¶ 3.  Plaintiff Michael R.C. McDonald is a

citizen of Wisconsin and a principal shareholder and officer of both Midwest Media

Group, Inc. and Digital.  Id. at ¶ 4.[4]

The defendants are two companies which served as "Plan Sponsors" for the

employee welfare benefit plans.  Defendant BESTCO is a Delaware corporation with its

principal place of business in Connecticut.  Id. at ¶ 5.  Defendant Crump is a Delaware

corporation with its principal place of business is Pennsylvania.  Id. at ¶ 6.   Crump is

the successor in interest to the BISYS Group ("BISYS").[5]  Id.

> B.    The 1999 Advantage Plan Contract

In 1997, BISYS offered the "Advantage Death Benefit Plan" and the "Advantage

Death Benefit Trust" (collectively, the "Advantage Plan") to small businesses as a

purportedly lawful mechanism for deferring or eliminating the taxation of certain pension

benefits.  Id. at ¶ 9.  BESTCO initially administered the Advantage Plan; provided

closing documents and marketing material; and collected premiums.  Id.   As part of the

marketing, Benistar Administrative Services, Inc. delivered a presentation explaining the

benefits of the Advantage Plan.[6]  Am. Compl., at ¶¶ 10-12; Ex. 1.

---

[4] McDonald and Connolly are collectively referred to herein as "employee plaintiffs."

[5] The court understands Crump to be the successor in interest to any of the entities bearing the name "BISYS," including BISYS Insurance Services, Inc.

[6] The plaintiffs' Amended Complaint alleges that BESTCO prepared this presentation, but the exhibit attached to their Amended Complaint features only the name "Benistar Administrative Services, Inc.," which is a different corporate entity than BESTCO.  Am. Compl. at ¶ 10; Ex. 1. The court reviews this document, recognizing that it may consider any documents referenced in the Amended Complaint or relied upon by the plaintiffs in drafting their Amended Complaint.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2003).

The plaintiffs allege that on December 28, 1999, Midwest Media Group, Inc. and Digital adopted the Advantage Plan. Am. Compl., at ¶¶ 14-15; Ex. 2. However, the Advantage Plan annexed to the Amended Complaint was signed by Midwest Media Group LLC, rather than the similarly named plaintiff in this matter: Midwest Media Group, Inc. Am. Compl., Ex. 2, at 14-24 (hereafter "1999 Advantage Plan Contract"). Digital was not a signatory to the Advantage Plan signed by Midwest Media Group LLC.[7] Id.

The 1999 Advantage Plan Contract was signed by McDonald on behalf of Midwest Media Group LLC on December 28, 1999 and by Daniel Carpenter on behalf of BESTCO on January 3, 2000. Am. Compl., at ¶ 15; 1999 Advantage Plan Contract at 20. BESTCO was designated in the contract as "Plan Sponsor" and as the "Named Fiduciary possessing the authority to control and manage the operation and administration of the plan and discharge its duties with respect to the Plan Sponsor as described herein." Id.

C.      The 2001 Amendment to the Advantage Plan

In November 2001, the 1999 Advantage Plan Contract was amended, and the Plan Sponsor was switched from BESTCO to BISYS Insurance Services.[8] Am. Compl.,

---

[7] BESTCO urges the court to take judicial notice that Digital was not incorporated until 2002. Mem. in Supp. (Doc. No. 70), at 8; Ex. B. The court does not have to decide whether to take judicial notice of this asserted fact, as it is clear on the face of the 1999 Advantage Plan Contract that Digital was not a signatory.

[8] McDonald signed on behalf of Midwest Media Group LLC as the "Employer" on November 7, 2001, and a representative from BISYS Insurance Services signed as "Plan Administrator/Sponsor" on November 12, 2001. However, a representative from First Union National Bank did not sign as "Trustee" until May 31, 2002. Am. Compl., Ex. 2, at 22.

at ¶ 20; Ex. 2, at 25-32 (hereafter "2001 Amendment to Advantage Plan Contract").

Under this Amendment:

> The Employer [Midwest Media Group LLC] hereby accepts the Plan Sponsor and Trustee to act as fiduciaries under the Plan and Trust. The Plan Sponsor will select the Plan Administrator, and the Plan Sponsor will be responsible to the Participants and their Beneficiaries for advising the Trustee of any changes of status or conditions relating to the Plan.

2001 Amendment to Advantage Plan Contract, § 1.02.

      D.    <u>The 2002 Amendment to the Advantage Plan</u>

In June 2002, the contract was again amended, this time to switch the employer to Digital, while retaining BISYS Insurance Services, Inc. as the Plan Sponsor. Am. Compl., at ¶ 20; Ex. 2, at 33-40 (hereafter "2002 Amendment to Advantage Plan Contract"). In Section 1.02, Digital expressly "accepts BISYS Insurance Services, Inc. as Plan Sponsor." 2002 Amendment to Advantage Plan Contract, § 1.02.

      E.    <u>Provisions of the Advantage Plan</u>

Attached to the Amended Complaint is one version of the Advantage Plan. Am. Compl., Ex. 2, at 35-53 (hereafter "Advantage Plan"). The plaintiffs represent that each time the Advantage Plan was adopted – by the 1999 Advantage Plan Contract, the 2001 Amendment to Advantage Plan Contract, and the 2002 Amendment to Advantage Plan Contract – "certain provisions were constant." Am. Compl., at ¶ 21.

The Advantage Plan only permitted the Plan Sponsor to authorize payments for reasonable expenses. <u>Id.</u> at ¶ 21. Specifically, the Advantage Plan provides:

> Reasonable expenses incurred in the establishment or administration of the Plan, and reasonable compensation of attorneys, accountants, actuaries, or of the Trustee, shall be paid by the Trust.

Advantage Plan, § 7.05.   The Advantage Plan also provided that:

> [N]o part of the corpus or Income of the Trust shall, at any time, be used or diverted to purposes other than for the exclusive benefit of the Participants (excluding the Employer) and in a manner consistent with any restrictions contained in the [Internal Revenue] Code.

Am. Compl., at ¶ 26; Advantage Plan, § 1.02.

Midwest Media Group, Inc. and Digital paid $1.3 million in premiums for the Advantage Plan over four years, as well as $19,000 in administration fees.  Am. Compl. ¶ 28.  Of the $1.3 million, $800,000 was paid by the "Midwest Media Group" and $500,000 was paid by Digital.  Id.

F.    Termination of the Advantage Plan and Adoption of DBO Plan

In 2002, the Advantage Plan was terminated, and "the defendants" transferred the plaintiffs' money to the Advantage Death Benefit Only Plan ("DBO Plan").[9]  Id. at ¶¶ 32-33.  This transfer was precipitated by the IRS issuing proposed regulations that would, when finalized, invalidate the Advantage Plan.  Id. at ¶¶ 31-32, 34.[10]  When the transfer to the DBO Plan occurred, BISYS knew or should have known that, if the IRS adopted the proposed regulations, the replacement DBO plan also would not qualify as an employee welfare benefit plan and participants in the DBO Plan would be forced to restate their taxable income to include contributions to the Plan.  Id. at ¶ 34.  Plaintiffs

---

[9] The Amended Complaint does not distinguish between defendants, although the court notes that the transfer to the DBO Plan occurred after BESTCO had already been replaced as Plan Sponsor.

[10] In order to determine whether the plaintiffs have stated a claim for breach of contract, the court does not need to decide the plaintiffs' allegation that the proposed regulations would have invalidated the Advantage Plan.

do not attach the DBO Plan to the Amended Complaint. From the plaintiffs' allegation that "[i]n each version of the contract, certain provisions were constant," Am. Compl. ¶ 21, the court makes the reasonable inference that the DBO Plan contained the same relevant sections of the Advantage Plan, namely the sections prohibiting unreasonable fees and requiring that the trust be used for the exclusive benefit of the participants.

G.      BISYS's Promise of Insurance Coverage

On March 24, 2003, BISYS represented to the plaintiffs that it was purchasing insurance to protect Plan participants, including the employee plaintiffs, from any additional tax, penalties, or interest that might accrue if the IRS disqualified the DBO Plan. Am. Compl., at ¶ 36; Ex. 4 (hereafter "Letter Regarding First Gulf Insurance Policy"). BISYS/Crump informed the employer plaintiffs that BISYS/Crump would provide the plaintiffs with an insurance plan from "Travelers/Gulf Underwriters Insurance Company" that would cover all losses if the IRS ruled that the DBO Plan did not comply with Section 419. Am. Compl., at ¶¶ 36, 40; Ex. 5 (hereafter "First Gulf Insurance Policy"). The Gulf Insurance Policy was effective from November 22, 2002 to October 15, 2005. Am. Compl., at ¶ 40; First Gulf Insurance Policy, at 80.

The first page of the First Gulf Insurance Policy featured the following warning in capital letters:

NOTICE: THIS POLICY IS A CLAIMS MADE POLICY. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, COVERAGE UNDER THIS POLICY IS GENERALLY LIMITED TO ONLY THOSE LOSSES, WHICH THE INSURED REPORTS DURING THE POLICY TERM PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

First Gulf Insurance Policy, at 80.

The First Gulf Insurance Policy further specified a series of sub-policy terms for each plan year: Year One ran from inception to October 15, 2003; Year Two ran from inception to October 15, 2004; and Year Three ran from inception to October 15, 2005. Gulf Insurance Policy, at 85. The First Gulf Insurance Policy also required that:

> CLAIMS UNDER THE POLICY WITH RESPECT TO A PLAN YEAR MUST BE BROUGHT BY FILING WITH THE INSURER DURING THE APPLICABLE SUB-POLICY TERM A PROOF OF LOSS.

Id.

On May 6, 2005, BISYS sent a letter to the employer plaintiffs attaching a Second Gulf Insurance Policy, this time covering a term from March 30, 2004 to April 15, 2007. Am. Compl., at ¶ 41; Ex. 6 ("Letter Regarding Second Gulf Insurance Policy"). The letter from BISYS/Crump specified that coverage under the second Gulf Insurance Policy requires the insured to:

> **[N]otify BISYS and the carrier in writing by completing Schedule B of the policy (Interim Proof of Loss Statement) and attach copies of any correspondence received from the IRS within 10 business days of receiving it from the IRS.**

Letter Regarding Second Gulf Insurance Policy, at 92 (emphasis in original).

H.    Actions by BISYS which Plaintiffs Contend Constitute Breaches of Contract

1.    Assessment of Unreasonable Fees

The IRS ultimately deemed the DBO Plan non-compliant with I.R.C. § 419. Am. Compl., at ¶ 37. Midwest Media Group, Inc. was notified, although it is unclear by whom, that the DBO Plan would terminate on September 19, 2003. Id. More than a

year later, at some point after October 15, 2004, the plaintiffs were sent two employee life insurance policy statements. Am. Compl. ¶ 38. Between the two policies, $503,722 was missing. Id. at ¶ 38. BISYS never provided the plaintiffs with a valuation or accounting of the trust. Id. BISYS later verbally explained to plaintiffs' counsel that the $503,722 in missing funds were charged as administrative and/or early termination fees. Id.

### 2. Breach of Insurance Pledge

In October 2005, the IRS audited McDonald and Connolly. Id. at ¶¶ 39, 55. After approximately two years of negotiations, the IRS required the employee plaintiffs to pay $499,354 in federal and state taxes, penalties, and interest as part of a settlement agreement. Id. The employee plaintiffs also incurred "contest expenses." Id. at ¶ 39. Gulf Underwriters Insurance Company denied coverage after the plaintiffs were audited by the IRS. BISYS did not reimburse the plaintiffs for their settlement with the IRS, despite Gulf's refusal to reimburse the plaintiffs. Id. at ¶¶ 42, 56.

## V. DISCUSSION

### A. Choice of Law

#### 1. Choice of Substantive Law

In the absence of a choice of law election in the contract itself, the court should apply the "most significant relationship approach" of the Restatement (Second) of Conflicts of Laws to determine which state's contract law applies. See Reichold v. Hartford Accident & Indemnity Co., 252 Conn. 774, 778 (2000); Restatement (Second) of Conflicts of Laws, § 188 (1971). Here, BESTCO's principal place of business is in

Connecticut, and Crump does regular, continuous, and substantial business in Connecticut, as did its predecessor, BISYS. Am. Compl., at ¶¶ 5-6, 8. As such, Connecticut is plausibly "the state in which the bulk of the contracting transactions took place." <u>Reichold</u>, 252 Conn. at 778. In addition, "[t]he parties' briefs assume that Connecticut law controls, and 'such implied consent is sufficient to establish choice of law.'" <u>Murtha v. Golden Rule Ins. Co.</u>, No. Civ.A.3:98-CV-975(JCH), 2001 WL 256145, *4, n.2 (D. Conn. 2001) (quoting <u>Krumme v. WestPoint Stevens Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000)). Therefore, the court applies Connecticut substantive law to the plaintiffs' claims.

2.     Choice of Statute of Limitations

In cases grounded on diversity jurisdiction, such as this, the district court is bound to apply the statute of limitations that the court of the forum state would apply. <u>See</u> <u>Computer Associates Int'l, Inc. v. Altai, Inc.</u>, 22 F.3d 32, 35, n.3 (2d Cir. 1994). Under Connecticut law, a statute of limitations is considered procedural for causes of action that existed at common law. <u>See</u> <u>Norton v. Michonski</u>, 368 F. Supp. 2d 175, 179 (D. Conn. 2005); <u>Baxter v. Sturm, Ruger, and Co., Inc.</u>, 230 Conn. 335, 339 (1994). In this case, the plaintiffs assert claims for breach of contract, a cause of action that existed at common law. Therefore, the court is bound to apply Connecticut's statute of limitations to these claims. Specifically, the court adheres to Connecticut's six-year statute of limitations for breach of contract actions. <u>See</u> Conn. Gen. Stat. § 52-576.

B.     Count One: Breach of the Advantage Plan by Crump

Plaintiffs' first cause of action is a claim for breach of contract against Crump for the improper assessment of $503,722 in fees. Crump argues that: (1) the plaintiffs fail to plead breach; (2) the plaintiffs fail to plead damages; and (3) the plaintiffs' claim for breach of contract is barred by the statute of limitations. Crump cannot prevail on any of these arguments.

Under Connecticut law, the elements of a breach of contract are "the formation of an agreement, performance by one party, breach of the agreement by the other party[,] and damages." FCM Group, Inc. v. Miller, 300 Conn. 774, 798 (2011) (quoting American Express Centurion Bank v. Head, 115 Conn. App. 10, 15-16 (2009)). Crump erroneously asserts that the only breach the plaintiffs have attempted to allege is a failure by Crump to provide a "valuation accounting," and that such a breach occurred in 2003, beyond the statute of limitations. Crump maintains that no damages could arise out of a failure to provide the "valuation accounting." Crump's Mem. in Supp. (Doc. No. 72) at 9.

However, the plaintiffs do not assert that the lack of a valuation accounting was the only breach. The plaintiffs additionally assert that Crump took an unreasonable percentage of the corpus of the trust in administrative fees. Am. Compl., at ¶ 47. This action would violate section 7.05 of the Advantage Plan, which provides that only "[r]easonable expenses incurred in the establishment or administration of the [Advantage] Plan, and reasonable compensation of attorneys, accountants, actuaries, or of the Trustee" are permissible under the contract. See Advantage Plan, § 7.05.

13

Crump shrewdly argues that, even if the fees were unreasonable, they were not incurred in the "establishment or administration" of the Advantage Plan, because the Plan had been terminated.  Crump's Mem. in Supp., at 9.  This argument is too clever: any fees assessed by Crump as part of the termination surely qualify as expenses incurred in the administration of the Advantage Plan.  Winding up the affairs of the Advantage Plan fits squarely within the definition of administering the Plan.

This action would likely also violate Crump's obligation under section 1.02 of the Advantage Plan not to use any part of the corpus or income of the trust for purposes other than the "exclusive benefit of the Participants."  Advantage Plan, § 1.02. The damages for violating section 7.05 would be the portion of the $503,722 in fees that were "unreasonable."  The damages for violating section 1.02 would be the fees which violated the principle that the trust could not be used for the benefit of any person other than the participants. Thus, plaintiffs have properly plead (1) breach and (2) damages.

Finally, Crump contends that the statute of limitations bars the plaintiffs' claim for breach of the provision prohibiting unreasonable fees.  Under Connecticut law, any action for breach of contract must be brought "within six years after the right of action accrues."  Conn. Gen. Stat. § 52-576.  In a breach of contract action:

> the cause of action is complete at the time the breach of contract  occurs, that is, when the injury has been inflicted. . . . Although the application of this rule may result in occasional hardship, [i]t is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action.

Rosenfeld v. I. David Marder & Assocs. LLC, 110 Conn. App. 679, 685 (2008) (quoting Amoco Oil Co. v. Liberty Auto & Electric Co., 262 Conn. 142, 153 (2002)).

This action was filed on June 1, 2010. With a six year statute of limitations, the injury from the breach of contract must have been inflicted on or before June 1, 2004. Plaintiffs allege that they were notified that the DBO Plan would terminate on September 19, 2003. Am. Compl., at ¶ 37. Plaintiffs further allege that at some point after October 15, 2004, they received two policy statements which revealed the missing $503,722. Id. at ¶ 38. The plaintiffs do not allege when the $503,722 were assessed. The court is required to accept the factual allegations of the Amended Complaint as true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, the court must also draw all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009). Based on the foregoing allegations, the court draws the reasonable inference that the fees were assessed shortly before October 15, 2004, when the policy statements reflecting the missing $503,722 were sent to the plaintiffs. This inference is particularly appropriate where knowledge of the timing of the assessment of the fees is "peculiarly within the possession and control of the defendant." Cf. Arista Records LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (holding that plaintiffs could meet the Twombly plausibility standard by pleading facts "upon information and belief" when the facts are known only by the defendant). Adopting this inference, the court concludes that the action was brought within the six-year statute of limitations. As a consequence, the court does not

need to address, at this time, whether the statute of limitations ought to have been tolled for any reason.

C.   Count Two: Breach of the Promise to Provide Audit Insurance by Crump

Plaintiffs' second cause of action is a claim for breach of contract against Crump for the failure to procure an insurance policy that would cover the plaintiffs' losses if the IRS ruled that the DBO Plan did not comply with I.R.C. § 419.  Am. Compl., at ¶¶ 52-58. Specifically, plaintiffs allege that on March 24, 2003, BISYS informed the employer plaintiffs that BISYS would provide the plaintiffs with an insurance plan from Travelers/Gulf Underwriters Insurance Company that would cover all losses if the IRS ruled that the DBO Plan did not comply with Section 419.  Am. Compl., at ¶¶ 36, 40; Exs. 4, 5.  The First Gulf Insurance Policy was effective from November 22, 2002 to October 15, 2005.  Am. Compl., at ¶ 40; First Gulf Insurance Policy, at 80.  On May 6, 2005, BISYS sent a letter to the employer plaintiffs attaching a Second Gulf Insurance Policy, this time covering a term from March 30, 2004 to April 15, 2007.  Letter Regarding Second Gulf Insurance Policy, at 92.  The plaintiffs do not allege that Crump promised that Crump itself would serve as insurer for the potential losses or that Crump promised to indemnify plaintiffs if Gulf denied coverage on a particular claim.

1.   Statute of Limitations

Crump argues that it tendered its performance when BISYS provided the insurance policies to the employee plaintiffs.  According to Crump, the First Gulf Insurance Policy was delivered on June 12, 2003, three months after the promise to provide insurance was made in a letter to McDonald.  See Crump's Mem. in Supp., at 8.

Crump argues that any alleged breach relating to Crump's promise to obtain audit insurance occurred on or before June 12, 2003.  Crump's Reply Mem. (Doc. No. 74), at 3.  Crump is correct that "[t]he procurement of inadequate insurance, which constitute[s] the alleged breach of contract, would have resulted in legal damage as soon as it occurred."  Tolbert v. Connecticut Gen. Life Ins. Co., 257 Conn. 118, 125 (2001).  The breach accrued when the policy was procured, because "that policy was either adequate or inadequate at that time."  Id.  The beneficiary of any insurance policy can determine whether the terms of the procured policy are adequate at the time the policy is issued.

Crump procured two insurance policies for the employee plaintiffs: on June 12, 2003 and May 6, 2005.  In opposition to the Motion to Dismiss, the plaintiffs have submitted correspondence with Gulf Insurance which indicates that they attempted to make claims under both the First and Second Gulf Insurance Policies.  Mem. in Opp. (Doc. No. 73), Ex. 2.  Because the First Gulf Insurance Policy was procured more than six years before this action was filed, any claim that Crump's procurement of that policy violated its promise to provide insurance is barred by the statute of limitations. However, the Second Gulf Insurance Policy was procured less than six years before the action was filed, and the plaintiffs' claim that the Second Gulf Insurance Policy breached

Crump's promise to provide insurance coverage is therefore permitted under the statute of limitations.[11]

Crump raises two additional defects in the plaintiffs' claim for breach of contract against Crump for the failure to procure an insurance policy. First, Crump argues that its additional promise to provide an insurance policy was a "courtesy" rather than a part of a "well-pled contract." Crump's Mem. in Supp., at 11. Crump contends that the plaintiffs did not provide consideration in exchange for this additional promise, and the promise is therefore unenforceable. Second, Crump argues that the plaintiffs have not properly plead breach of any particular provision of the contract.

2.    Adequate Consideration

In support of this argument, Crump cites the recent case of Harley v. Indian Spring Land Co., 123 Conn. App. 800 (2010). Although the court's holding in Harley is instructive, it does not lend support to Crump's argument. In Harley, the plaintiff placed a $10,000 "good faith deposit" on a plot of land being sold by the defendant. Id. at 804. Under the terms of the original contract between the parties, the plaintiff had the right to purchase the plot for the set price of $1.2 million if the purchase was executed by September 7, 2004. Id. "[T]he plaintiff could terminate his reservation at any time, resulting in the return of his deposit and the defendant's ability to place the lot back on the market." Id. at 805. The plaintiff encountered delays in preparing architectural

_____

[11] In its opposition brief, plaintiffs complain that Crump hoodwinked them into letting the statute of limitations expire by expressing interest in mediation. Mem. in Opp. (Doc. No. 73), at 15-17. The court is not aware of, and plaintiffs do not cite, any authority for the proposition that the doctrine of "unclean hands" applies to the conduct described by the plaintiff and could toll the statute of limitations.

drawings for a home he wished to place on the lot.  At this point, a representative of the defendant made an additional promise: the defendant agreed to waive the September 7, 2004 deadline, and in exchange the plaintiff kept his deposit with the escrow agent.  Id. at 806.  However, when the plaintiff ultimately attempted to purchase the lot in early 2005, the defendant indicated that it was no longer available for sale at the contractual purchase price of $1.2 million.  Id. at 808-10.

The defendant in Harley argued that its waiver of the September deadline was not an enforceable modification of the contract because "there was inadequate consideration for the modification."  Id. at 812.  The Appellate Court disagreed, holding that "the plaintiff gave up his unfettered use of the $10,000 deposit money" and this constituted adequate consideration.  Id. at 819.   Consideration can be a "benefit to the party promising," but it may also be a "loss or detriment to the party to whom the promise is made."  Id. at 819 (quoting Martin Printing Inc. v. Sone, 89 Conn. App. 336, 345 (2005)).

The facts of the dispute between Crump and the plaintiffs are analogous to the situation in Harley.   Under section 7.08 of the Advantage Plan, the plaintiffs had the right to terminate the Advantage Plan at any time.  The plaintiffs allege that Crump knew that there was a risk that the DBO Plan would not comply with I.R.C. § 419, so they offered insurance coverage to protect the DBO Plan participants.  Am. Compl., at ¶ 36.  From this, the court may reasonably infer that the insurance coverage was intended to induce the plaintiffs to continue participating in the (now riskier) tax product.  The plaintiffs therefore continued to give up their use of the deposits they had made with the

trustee. The plaintiffs' continued participation in the DBO Plan, therefore, constituted consideration for Crump's additional promise of insurance coverage. Moreover, the employer plaintiffs were required to pay the cost of the audit that qualified them for the insurance coverage, Am. Compl., ¶ 36; Ex. 4, and this payment certainly qualifies as a "loss or detriment to the party to whom the promise [was] made." Harley, 123 Conn. App. at 819. Therefore, the plaintiffs sufficiently allege they provided valid consideration that made Crump's promise enforceable.

Of course, "a promise to do that which one is already bound by his contract to do is not sufficient consideration to support an additional promise by the other party to the contract." Viera v. Cohen, 283 Conn. 412, 441 (2007). Here, however, the plaintiffs were not required to continue participating in the DBO Plan. The plaintiffs agreed to continue placing its funds in the DBO Plan in exchange for Crump's promise to secure adequate insurance coverage, thereby satisfying the consideration requirement.

        3.     Allegations of Breach

Crump argues that the plaintiffs have failed to cite to any provision of the alleged contract that has been breached. Taking the facts alleged in the Amended Complaint as true, the court disagrees. In a March 2003 letter, Crump agreed to pay the cost of an insurance premium and to procure an insurance policy that would cover "the financial loss of [any] disallowed deduction, any interest required as a result of the lost deduction, any penalties assessed by the IRS, and contest expenses." Letter Regarding First Gulf Insurance Policy, at 77. In May 2005, Crump again agreed to pay the insurance premium for a policy that "covers the financial loss of [any disallowed] deduction,

interest, penalties and contest expenses up to certain specified limits."  Letter Regarding Second Gulf Insurance Policy, at 92.  The plaintiffs allege that the insurance carrier – Gulf Underwriters – denied coverage when the plaintiffs were audited by the IRS.  Am. Compl. ¶ 42.  The plaintiffs argue that the Second Gulf Insurance Policy therefore "did not fulfill BISYS' promise . . . thereby breaching BISYS' agreement with plaintiffs."  Am. Compl. ¶ 56.

In response, Crump attaches a June 2003 letter pertaining to the First Gulf Insurance Policy which cautioned the plaintiffs that the First Gulf Insurance Policy contained "certain exclusions" and the "terms of the policy" were nevertheless "controlling."  Crump's Mem. in Supp., at 11, Ex. A.  Even assuming the court could consider such an exhibit at the Motion to Dismiss stage, the letter does not address what promises Crump made in connection with the Second Gulf Insurance Policy. According to the Amended Complaint, Crump promised to procure a policy that provided certain benefits, and neither insurance policy procured delivered those benefits.  The plaintiffs have brought a claim for breach of contract in connection with the promise of the Second Gulf Insurance Policy, and that claim falls within the six year statute of limitations.  Accordingly, the court grants the Motion to Dismiss the plaintiffs' claims for breach of the promise to provide the First Gulf Insurance Policy but denies the Motion to Dismiss the plaintiffs' claims for breach of the promise to provide the Second Gulf Insurance Policy.

D.    Count Three: Breach of the Advantage Plan by BESTCO

Plaintiffs' third and final cause of action is a claim for breach of contract against BESTCO.  The court finds that any claims against BESTCO are clearly barred by the statute of limitations.

BESTCO initially administered the Advantage Plan; provided closing documents and marketing material; and collected premiums.  Am. Compl., at ¶ 9.  The 1999 Advantage Plan Contract was signed by McDonald on behalf of Midwest Media Group LLC and by Daniel Carpenter on behalf of BESTCO.  Am. Compl., at ¶ 15; 1999 Advantage Plan Contract, at 20.  For the 1999 Advantage Plan, BESTCO was designated in the contract as "Plan Sponsor" and as the "Named Fiduciary possessing the authority to control and manage the operation and administration of the plan and discharge its duties with respect to the Plan Sponsor as described herein."  Id.

However, in November 2001, BESTCO was relieved as Plan Sponsor.  Am. Compl. ¶ 20; 2001 Amendment to Advantage Plan Contract.  The contract listed BISYS Insurance Services in BESTCO's place as Plan Sponsor.  Id.  Under the 2001 Amendment to the Advantage Plan Contract:

> The Employer [Midwest Media Group LLC] hereby accepts the Plan Sponsor [BISYS Insurance Services] and Trustee to act as fiduciaries under the Plan and Trust.  The Plan Sponsor will select the Plan Administrator, and the Plan Sponsor will be responsible to the Participants and their Beneficiaries for advising the Trustee of any changes of status or conditions relating to the Plan.

2001 Amendment to Advantage Plan Contract, § 1.02.

In June 2002, the Advantage Plan was again amended, this time to switch the employer to Digital.  Am. Compl. ¶ 20; 2002 Amendment to Advantage Plan Contract.

BISYS Insurance Services, Inc. continued to be listed as Plan Sponsor. Id. In Section

1.02, Digital expressly "accepts BISYS Insurance Services, Inc. as Plan Sponsor."

2002 Amendment to Advantage Plan Contract, § 1.02. Because Digital did not become

a party to the contract until BISYS replaced BESTCO, Digital was never in contractual

privity with BESTCO.

BESTCO has not been in contractual privity with Midwest Media Group, Inc.

since November 2001, well outside the statute of limitations.[12] The 2001 Amendment to

the Advantage Plan Contract constituted a valid novation of the 1999 Advantage Plan

Contract, thereby terminating BESTCO as a party to the contract. To establish a valid

novation, BESTCO must prove that Midwest Media Group, Inc. had accepted a new

party in the place of BESTCO to which the plaintiffs would look for fulfillment of the

obligation owing to them. See Spicer v. Spicer, 33 Conn. App. 152, 158 (1993). In

addition, BESTCO must prove that the plaintiffs agreed to a discharge of BESTCO's

obligations to them. See id. at 158-59. Here, Midwest Media Group LLC expressly

accepted BISYS Insurance Services, Inc. as the "Plan Sponsor." 2001 Amendment to

Advantage Plan Contract, § 1.02. The use of the singular, rather than plural, evidences

Midwest Media Group LLC's intent to discharge BESTCO as Plan Sponsor, replacing

---

[12] BESTCO adroitly observes that the only contract it signed was with Midwest Media Group LLC, rather than the plaintiff in this action, Midwest Media Group, Inc. Because the court concludes that any contract claims the plaintiffs might have against BESTCO are barred by the statute of limitations, the court does not have to decide whether Midwest Media Group, Inc. is the successor in interest to Midwest Media Group LLC, as asserted by plaintiffs in their opposition brief. Mem. in Opp. (Doc. No. 73), at 20. For the purposes of this Motion, the court assumes, without deciding, that Midwest Media Group, Inc. is the successor in interest to Midwest Media Group LLC.

them with BISYS Insurance Services. As a consequence, BESTCO's duties under the 1999 Advantage Plan terminated in November 2001, and any claim that BESTCO breached a contract with Midwest Media Group, Inc. is time barred.

The plaintiffs also fail to allege that BESTCO was responsible for any of the actions after 2001 that breached any of the contracts. Instead, the plaintiffs assert that BESTCO "lured plaintiffs into the contract," Am. Compl. ¶ 64, and the plaintiffs describe BESTCO's breach as "inducing plaintiffs to enter into a Plan that they knew to be non-compliant." Am. Compl. ¶ 70. Such allegations are tort claims, and the court has already dismissed plaintiffs' tort claims with prejudice because they are barred by Connecticut's three year statute of limitations. See Hearing Tr. 1/3/11 (Doc. No. 50); Conn. Gen. Stat. § 52-577.

The plaintiffs have already been afforded an opportunity to replead, and it is now clear that plaintiffs' pleading deficiencies in Count Three cannot be cured by any amendment. Therefore, the court grants BESTCO's Motion to Dismiss Count Three with prejudice.

## VI. CONCLUSION

For the foregoing reasons, the court **grants** with prejudice BESTCO's Motion to Dismiss [**Doc. No. 69**]. The court **grants in part** Crump's Motion to Dismiss [**Doc. No. 71**] as to the plaintiffs' claim under Count Two regarding the First Gulf Insurance Policy, but **denies in part** Crump's Motion to Dismiss as to plaintiffs' claim under Count Two regarding the Second Gulf Insurance Policy. The court further denies Crump's Motion to Dismiss as to Count One of the Amended Complaint.

24

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 16th day of September, 2011.

_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge